**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LYNETTE G.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 19 C 1475** |
| **v.** | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| **KILOLO KIJIKAZI, Commissioner** | ) | |
| **of Social Security,** [1] | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Lynette G.[3] applied for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") on March 18, 2015 when she was 58 years old, contending that she

became disabled on December 31, 2014. (R. 74, 100.) After a hearing, an administrative law judge

("ALJ") issued an opinion finding that Plaintiff was not disabled. (R. 19-33.) The Appeals Council

denied review of the ALJ's decision (R. 7-9), making the ALJ's decision the final decision of the

---

[1] The Court substitutes Kilolo Kijikazi for her predecessors as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On April 24, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 10.) On August 22, 2019, this case was reassigned to this Court for all proceedings. (D.E. 18.)

[3] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis*., 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated.

Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff seeks remand of the Commissioner's decision denying her application for benefits (D.E. 15), and the Commissioner has asked the Court to affirm the decision. (D.E. 23.) The matter is now fully briefed.

## I.    ADMINISTRATIVE RECORD

### A.    Medical Evidence

Since at least 2013, Plaintiff has been diagnosed with and treated for peripheral artery disease (PAD).[4] (R. 648.) Between October 2012 and July 2014, Plaintiff was incarcerated, and thus received medical treatment through the Cook County Hospital System. (R. 419-646.)[5] While incarcerated, she complained intermittently of claudication (leg cramping and pain) due to PAD; at other times her leg pain was mild. (R. 470, 473, 484, 494.) An arterial ultrasound of Plaintiff's lower extremities in August 2013 revealed significant proximal stenosis (blocked arteries) in both of her legs and no arterial flow in her right posterior tibial artery (main artery in lower leg.) (R. 475, 648.) While she was incarcerated, a vascular surgeon recommended surgery, but Plaintiff declined to talk to him about additional treatment. (R. 470.)

On December 24, 2014, Plaintiff reported to the St. Anthony's Hospital emergency room staff that after walking a lot the previous day, her lower extremities began severely cramping up and the pain and cramping persisted into the following day. (R. 1192.) Between December 24, 2014 and October 2015, Plaintiff sought medical treatment and medication management from St. Anthony's Hospital for chronic obstructive pulmonary disease ("COPD"), renal insufficiency, headaches, back pain, and sexual assault. (R. 1189-1223.) A CT scan of her brain and ultrasound

---

[4] PAD is a circulatory problem in which narrowed arteries reduce blood flow to your limbs. PAD causes symptoms such as leg pain when walking (claudication). https://www.mayoclinic.org/diseases-conditions/peripheral-artery-disease/symptoms-causes/syc-20350557. *visited on* March 1, 2021.

[5] Plaintiff's PAD, COPD and high blood pressure were monitored and medicated during her incarceration, but the majority of medical records from this time period concern mental health treatment and individual complaints for issues such as eye or shoulder pain. (R. 431, 437, 444, 451- 53.)

of her scapular region back were unremarkable. (R. 1200, 1201.) On October 15, 2015 she visited St. Anthony's complaining of back and leg pain; x-rays did not show any fractures. (R. 1210, 1211.)

Plaintiff began receiving medical treatment from Clinical Physician's Assistant Anna Stastny, PA-C, of Lawndale Christian Health Center ("LCHC") in November 2015. (R. 685.) Among other issues, Ms. Stastny treated Plaintiff for PAD, arthritis, COPD, and chronic kidney disease, which included prescribing aspirin and amlopidine for her artery disease and high blood pressure. (R. 685-88.)[6] On January 11, 2016, Ms. Stastny completed a residual functional capacity (RFC) form in which she checked "yes" when asked if Plaintiff's disability prevented her from standing for six to eight hours, if those impairments limited her to standing for up to 30 minutes, and if she needed to lie down twice a day for an hour to relieve pain and that she could walk one-half block. (R. 691-92.)[7] In the RFC form, Ms. Statsny also opined that Plaintiff could lift and carry less than five pounds, that she had difficulty with standing activities such as walking and sweeping, and that she could not squat. (R. 693.) Finally, Ms. Stastny opined that Plaintiff could not return to her previous job as a homemaker but could work part time at a job that allowed her to remain seated, such as office work. (*Id.*)

Plaintiff continued to visit LCHC for her medical care and medication management throughout 2016. In April 2016 Plaintiff underwent a second doppler exam of her lower extremities which revealed "significant arterial occlusive disease" in her femoral, popliteal, posterior and dorsalis arteries and moderate reduction in her ankle and brachial arteries. (R. 1166.) At

---

[6] Plaintiff also took Symbicort and Proventil for her COPD, Lisinopril for high blood pressure and PAD, and Lipitor for high cholesterol. (R. 687.) The psychiatric department of Loretto Hospital prescribed Citalopram and Trazodone. (*Id.*)

[7] Ms. Stastny wrote "n/a" in answer to a separate question as to whether the Plaintiff could stand at all. The parties agree that this designation of "n/a" was in error. (Def. Resp. to Mot. for Summ. J. at 4.)

appointments in August and September 2016, Plaintiff complained of increased claudication. (R. 1086, 1173.) [8] She continued to take acetaminophen, aspirin and Lisinopril for her PAD. (*Id.,* 1122.) On December 28, 2016, Plaintiff participated in a PAD study through Northwestern Memorial Hospital and was again found to have severely abnormal blood flow in both of her lower extremities as measured by arterial ultrasound. (R. 1121, 1172.)

Ms. Stastny completed another RFC in April 2017 after having treated Plaintiff monthly for the previous 18 months. (R. 1285-90.) In the 2017 RFC form, Ms. Stastny opined that Plaintiff's impairments (PAD, COPD and arthritic pain) were "life-long/progressive" and that while currently stable, they would worsen with time and age. (R. 1286.) According to the 2017 RFC, Plaintiff's impairments again prevented her from standing for six to eight hours per day and limited her to standing for 10-15 minutes, sitting for two hours at a time, and carrying less than five pounds at a time because she used a cane. (R. 1286-87.) She could walk a quarter of a block before having to stop and rest. (*Id.*) In answer to a question on the RFC form about work Plaintiff could perform given her impairments, Ms. Stastny opined that Plaintiff could work part time at "a desk position that allows for frequent breaks." (R. 1289.)

## B.    Agency Examinations

On July 30, 2015, Plaintiff had a consultative physical evaluation with Liana Palacci, D.O., who acknowledged Plaintiff's PAD and complaints of leg and back pain. (R. 654.) Dr. Palacci's examination revealed that Plaintiff had a normal gait and was able to squat, that she used a non-prescribed cane for balance, and that she refused heel-toe walking. (*Id.*) On December 8, 2015,

---

[8] In September 2016 Plaintiff was treated at Mt. Sinai hospital for acute renal failure related to cocaine use. (R. 1225-12-43.) Plaintiff received mental health and substance abuse treatment, vocational counseling, and social services from Loretto Hospital and Trilogy Behavioral Health throughout 2014-2016. (R. 708-1000, 1004-1043.) When speaking to her Trilogy social worker, Plaintiff regularly expressed the desire to find a job and submitted job applications but was unsuccessful at finding a position she could perform with her physical impairments and lack of car; she eventually gave up her job search in favor of trying to go back to college. (R. 782, 792, 805, 841, 849.)

Rodrigue Tinfang, MD, performed a second consultative physical examination. (R. 674-77.) Dr. Tinfang noted that Plaintiff explained that her leg and back pain worsened with prolonged walking, standing, or bending. (R. 674.) She had an antalgic gait, was able to squat with mild difficulty, refused heel-toe walk because she said she could not do it, and was able to walk greater than 50 feet with her cane. (R. 676.) Her range of motion was normal in her left hip, right knee, and ankles but limited in her left knee and right hip. (*Id.*) On August 26, 2015, non-examining agency doctor David Mack, MD, determined at the initial level that Plaintiff did not have any severe impairments. (R. 85.) On reconsideration, on January 19, 2016, non-examining agency doctor Calixto Aquino, MD, provided an RFC opinion that Plaintiff could stand and/or walk for six hours in an eight-hour work day, sit for six hours in an eight-hour work day, occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. (R. 111.) In making her RFC opinion, Dr. Aquino did not review any medical records beyond December 2015. (*Id.*)

**C.    Hearing Testimony**

Plaintiff worked as a tax preparer from 1995 to 2005, earning $10 per hour,[9] and as a self-employed homemaker from 2009 until her alleged onset date of December 2014, earning $8.50 per hour helping clients with cooking, cleaning, and errands in their homes. (R. 50-54, 220-226.) She testified that her peripheral artery disease causes pain, claudication, and fatigue in her legs, and that these symptoms, in addition to pain from arthritis and shortness of breath due to COPD made her unable to work as of December 31, 2014. (R. 55, 214.) She testified that leg pain and shortness of breath from PAD and COPD caused her to have to stop to rest multiple times when walking as far as one block. (R. 57.) Plaintiff also testified that she could stand for about 15 minutes before having to sit and rest for five minutes and that she could carry up to 10 pounds at a time.

---

[9] Plaintiff testified that she did not have any training for the tax preparer job and was hired off the street to help people determine the correct tax forms to use and what deductions they were entitled to. (R. 53.)

(R. 62-3.) On questioning from the ALJ about her ability and desire to take classes at a local college, Plaintiff testified that it was something she wanted to do, but that she knew she was not going to be able to do, because she would not be able to walk across the campus. (R. 56.) She testified that she was able to do laundry and grocery shopping for herself. (R. 59.)

A vocational expert ("VE") also testified at the hearing, explaining that Plaintiff's previous tax preparer job was semi-skilled and sedentary and her previous job as a homemaker/day worker was unskilled and classified as a medium exertion level but was light as Plaintiff performed it. (R. 68, 70.) The ALJ asked the VE four hypotheticals.  The VE testified that Plaintiff would be able to perform both of her previous jobs if limited to light work with frequent kneeling or crawling, that she would be able to perform her tax preparer job if limited to the same level of light work but also was allowed to use a cane to walk and had the option of standing for one hour and then sitting for five minutes, and that she would continue to be able to perform her past tax preparer job if her exertion level was limited to sedentary. (R. 70.) When the ALJ added the additional requirement limiting Plaintiff to "simple, routine work with simple, work-related decision[s]," the VE testified that Plaintiff could not perform either of her previous jobs. (R. 71.)

### C.    ALJ Opinion

On November 27, 2017, the ALJ wrote an opinion finding Plaintiff was not under a disability within the meaning of the Social Security Act from her onset date through the date of the decision. (R. 22.) The ALJ determined Plaintiff had the severe impairment of peripheral artery disease, but that her impairment did not meet or medically equal a listed impairment. (*Id.*)  The ALJ also determined that a number of Plaintiff's other physical and mental impairments were not severe, including COPD, hypertension, kidney disease, PTSD, depression, and substance abuse. (R. 22.)  The ALJ determined that Plaintiff had an RFC to perform light work, except that she

6

could never climb ladders, ropes or scaffolds, could never be exposed to unprotected heights or moving mechanical parts, and was limited to frequent kneeling and crawling. (R. 27.)

The ALJ justified her decision on the ground that while the evidence showed that Plaintiff had difficulty walking, there was no objective basis for Plaintiff's testimony that she could not stand for more than 10 minutes at a time or lift more than 10 pounds. (R. 29.) Specifically, the ALJ noted that Plaintiff had full mobility and strength in her joints and did not receive treatment for her PAD beyond Tylenol, aspirin and a prescription hypertension medication (R. 29.) Additionally, the ALJ explained that there was no indication that more significant medication or surgery had been suggested. (*Id.*)

With respect to the medical opinions, the ALJ gave limited weight to both of Ms. Stastny's RFC opinions. The ALJ gave limited weight to Ms. Stastny's first opinion because she had only seen Plaintiff twice at the time of the opinion, because Ms. Stastny provided no reason for her finding that Plaintiff could only stand for 30 minutes, and because Ms. Stastny stated Plaintiff could not squat when she had been able to squat at both of her consultative examinations. (R. 30.) The ALJ gave no weight to Ms. Stastny's opinion that Plaintiff could work part-time if the job involved sitting because Mr. Stastny was not a vocational expert and "significantly, neither her notes nor the record as a whole set forth any limitation in standing or lifting/carrying." (*Id.*)

The ALJ explained that Ms. Stastny's treatment notes did not support her first RFC opinion because x-rays did not reveal degenerative joint disease and because Plaintiff had a normal gait at some of her examinations. (R. 31.)[10] The ALJ wrote that at one particular examination, "notably, no mention was made of peripheral artery disease or joint disease." (R. 31.)

---

[10] The ALJ summarized additional medical records, particularly as they related to Plaintiff's COPD and chronic kidney disease, which are not relevant to our analysis concerning Plaintiff's limitations due to her PAD. Plaintiff does not raise any issues with respect to the ALJ's treatment of her other impairments, so we do not address them here.

The ALJ gave Ms. Stastny's second RFC opinion minimal weight on the ground that it was inconsistent because she checked the box that Plaintiff could perform a job at "previous employment" but also opined that she could work part time at a desk job. (R. 32.) The ALJ further stated that there was no basis for the RFC's two-hour sitting limitation and the lifting/carrying limitation was greater than what was supported by Plaintiff's testimony. With respect to the state agency non-examining consultants, the ALJ gave great weight to their opinions about Plaintiff's mental health but lesser weight to their opinions about Plaintiff's physical impairments because they did not think Plaintiff had any severe impairments, while the ALJ determined that Plaintiff's PAD was severe. (*Id.*)

Ultimately, the ALJ explained that she found Plaintiff's subjective allegations about the degree of her limitations to be inconsistent with the record as a whole. (R.32.) In particular, the ALJ found the greatest inconsistency to be Plaintiff's lack of treatment beyond aspirin for her PAD. (*Id.*) She also noted that Plaintiff's intensive search for employment and her activities of daily living were not consistent with her allegations of her limitations. (*Id.*) Finally, the ALJ declined to find Plaintiff's previous job as a tax preparer to be "past relevant work" because both she and her employer failed to report those earnings as legally required. (R. 33.) The ALJ found that Plaintiff was able to perform her previous job as a day worker as actually and generally performed and thus was not disabled. (*Id.*)

## II.    LEGAL ANALYSIS

### A.  Standard of Review

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk*, 923 F.3d at 496 (internal citations and quotations omitted). "An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion," *i.e.*, "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). "Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (internal citations and quotations omitted).

### B. The RFC

Relevant here, prior to Step Four, an ALJ determines a claimant's RFC, or "what an individual can still do despite his or her limitations." S.S.R. 96-8p. The ALJ must explain how he reached his conclusion about the residual functional capacity of a claimant and support that conclusion with evidence from the record. *See, e.g.*, SSR 96-8p, case 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence[.]").  In this case, the ALJ assigned Plaintiff an RFC for light work with certain postural limitations. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Light work requires a "good deal" of walking or standing, defined by the regulations as six hours in an eight-hour workday.[11]

### C. ALJ Did Not Support Her Conclusions

Plaintiff makes two arguments for remand: (1) the ALJ's analysis of the opinions of Plaintiff's primary care provider was flawed; and (2) the ALJ improperly failed to develop the

---

[11] https://www.ssa.gov/OP_Home/rulings/di/02/SSR83-10-di-02.html, *visited on* April 9, 2021.

record by not ordering an up-to-date medical opinion. (Pl. Mem. in Support of Sum. J. at 5.) We remand because the ALJ failed to "build a logical bridge" from the evidence to her conclusion that Plaintiff was not disabled.

Specifically, the ALJ made a number of errors when evaluating the medical evidence, particularly with respect to her determination that the medical evidence did not support the opinions of Ms. Stastny, Plaintiff's medical treater.[12] Indeed, some of the ALJ's stated reasons for rejecting Ms. Stastny's opinions were based purely on error, such as her belief that Ms. Stastny had written that the basis for giving Plaintiff a standing limitation was "not applicable," a conclusion that the Commissioner agrees was incorrect. Elsewhere in her opinion, the ALJ identified a particular treatment note that does not mention Plaintiff having any problems standing or walking as evidence that the medical record does not support Plaintiff's claims about her symptoms. However, the Court notes the record the ALJ cites is from Trilogy Behavioral Health, which provided Plaintiff's mental health and substance abuse treatment as well as case management for various social services she received; none of the Trilogy records mention treating Plaintiff's physical conditions. (R. 706-1002.) The ALJ made another error when she found Ms. Stastny's second opinion to be inconsistent because she opined that Plaintiff could work part time at a desk job and also checked a box that stated Plaintiff could perform previous employment. But at least one of Plaintiff's previous jobs – tax preparer – was classified by the VE as sedentary, which is not inconsistent with Ms. Stastny's RFC. (R. 70.)

---

[12] Physician's assistants like Ms. Stastny are considered "other medical sources." *See* 20 C.F.R. § 404.1513(d)(1); SSR 06–03p. Although the opinions of other medical sources are important and should be considered when evaluating "key issues such as impairment severity and functional effects," their findings cannot "establish the existence of a medically determinable impairment." SSR 06–03p. In deciding how much weight to give to opinions from these "other medical sources," an ALJ should apply the same criteria listed in § 404.1527(d)(2). *Id.; Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007). In this case, Ms. Stastny did not give an opinion on the ultimate question of Plaintiff's disability, but only about what limitations she had due to the severity of her impairments. It is these conclusions the ALJ evaluated improperly.

Beyond these errors, the ALJ also failed to discuss that in addition to her standing recommendations, Ms. Stastny separately opined that Plaintiff could not walk for more than one-half a block (reduced to one-fourth in the second RFC) before needing to stop and rest. The undisputed medical evidence described Plaintiff's problems with claudication and noted that it became particularly bad after extended walking. Two doppler tests in 2016 indicated that Plaintiff's PAD was "severe," and the ALJ herself acknowledged that Plaintiff's PAD impacted her ability to walk. But after agreeing that Plaintiff's PAD affected her ability to walk, the ALJ failed to evaluate how that limitation in the RFC still allowed Plaintiff to perform light work – which is described in the regulations as work requiring up to six hours of walking or standing per day.[13]

The ALJ also wrongly "played doctor" when she determined that if Plaintiff's PAD was as severe as she contended, she would have had more treatment than aspirin therapy. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009). The ALJ mentioned several times in her opinion that Plaintiff "only" took aspirin and hypertension medication and also noted that no other medications had been prescribed or surgery contemplated, implying that if Plaintiff's symptoms from her PAD were as severe as she contended, her treatment would have been different.

An ALJ "plays doctor" when she substitutes her own independent lay opinion about an impairment for that of medical experts. *Id.*; *see also Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong."). In this case, no doctor characterized Plaintiff's medicine regime for PAD as

---

[13] We also note that the ALJ's rejection of Ms. Stastny's opinion because she was not a vocational expert was flawed. Ms. Stastny described Plaintiff's walking and standing limitations in terms of the exertional limitations caused by her PAD. Her statement that Plaintiff could only work at a part-time job that allowed her to be seated is semantically no different than her opinion that Plaintiff was unable to stand or walk for six hours out of a full work day at a job classified at the light exertion level.

"conservative" or suggested that aspirin and blood pressure medication indicated mild disease. And while Defendant points to the state agency doctor's opinion about the non-severity of Plaintiff's PAD, in fact, the ALJ disagreed with that conclusion and found that Plaintiff's PAD was a severe impairment. The ALJ also overlooked the fact that Plaintiff participated in a Northwestern University PAD study that included doppler testing of the blood flow in her legs, the results of which the agency doctors did not review. And more importantly, the state agency doctor opinions did not consider any medical evidence post-2015, which includes two additional doppler tests and an RFC opinion from Plaintiff's treater. [14] These mistakes, coupled with the ALJ's independent conclusion that Plaintiff's aspirin therapy signaled that her impairments were not as severe as she alleged, erode the ALJ's conclusion that Plaintiff's allegations about the severity of her impairments were inconsistent with the medical evidence. *See Myles,* 582 F.3d at 677–78 (finding ALJ "play[ed] doctor" by concluding that absence of insulin treatment for claimant's diabetes signaled non-severe disease even though no doctor gave any reason why insulin was not prescribed.)

Defendant argues that the ALJ did not impermissibly play doctor because a state agency physician categorized Plaintiff's PAD as "physically non-severe" and noted that in the past she had refused treatment for her claudication. And in response to Plaintiff's explanation that aspirin therapy is the primary treatment for PAD, Defendant points to cases that discuss recommendations for surgery as another treatment option for this condition. (Def. Mem. in Support of Sum. J. at 8-9.) But these are not justifications given by the ALJ or the Appeals Council, and thus we do not

---

[14] While we do not need to address Plaintiff's argument that the ALJ failed to develop the record, we note that the agency doctors' failure to consider Plaintiff's 2016 medical records further erodes the ALJ's contention that there is no medical evidence to support Ms. Stastny's opinions.

consider them.[15] *See SEC v. Chenery*, 318 U.S. 80, 87-88 (1943) (generally confining a reviewing court to the agency's actual rationale for its decision, not an after-the-fact justification.)

In sum, this matter involves consideration of multiple aspects of the record as relied upon by the ALJ to find Plaintiff not disabled. In deference to the ALJ, the Court is not reweighing the evidence, but rather, we find that the ALJ's multiple errors in evaluating, understanding, or applying evidence that was favorable to claimant, coupled with her having "played doctor" in a manner that the Seventh Circuit has deemed incorrect, made the necessary "logical bridge" from the evidence to her conclusion a bridge too far.

**CONCLUSION**

For the foregoing reasons, we grant Plaintiff's request for remand (D.E. 15) and deny the Commissioner's motion to affirm (D.E. 23).

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: March 30, 2022**

---

[15] The ALJ did not acknowledge or question why Plaintiff refused treatment from a vascular surgeon for her PAD, and so we cannot draw any inferences from her behavior. The Court notes, however, that Plaintiff refused specialized treatment for all of her impairments while incarcerated and there is no evidence that her refusals were related to the severity or non-severity of any impairment.